# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>Kameron Patricia Reid,<br><br>*Defendant(s)* | Case No. 4:21-mj-71795-MAG<br><br>**UNDER SEAL** |

**FILED**

Nov 16 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **May 16, 2021** in the county of **Alameda County** in the **Northern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1), (b)(1)(C) | Distribution of a Mixture of Substance Containing a Detectable Amount of Fentanyl<br><br>Maximum Penalties: 20 years imprisonment, $1,000,000 fine, maximum life term of supervised release (minimum three year term), $100 special assessment |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Tyler Esswein

☑ Continued on the attached sheet.

/s/ *Tyler Esswein*
*Complainant's signature*

Tyler Esswein, FBI
*Printed name and title*

Approved as to form /s/ *Molly K. Priedeman*
AUSA  Molly K. Priedeman

Sworn to before me by telephone.

Date: November 15, 2021

*Kandis Westmore*
*Judge's signature*

City and state: Oakland, California

Hon. Kandis A. Westmore
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Tyler Esswein, a Special Agent, Federal Bureau of Investigation (FBI), being duly sworn, state:

### I.   INTRODUCTION

1. I make this affidavit in support of an application under Rule 5 of the Federal Rules of Criminal Procedure for a complaint and arrest warrant authorizing the arrest of Kameron Patricia REID for distribution of a mixture or substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), to Inmate 2 on or about May 16, 2021.

### II.   SOURCES OF INFORMATION

2. This affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrants. I have not included every fact known to me concerning this investigation. Instead, I have set forth only the facts necessary to establish probable cause that the violations of the federal laws identified above have occurred.

3. I have based my statements in this affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by other agents, law enforcement officers, information provided by other law enforcement officers, information provided by photographic and/or video-recorded evidence, and information provided by records and databases. I believe these sources to be reliable. To the extent this Affidavit discusses statements made by witnesses, I have also included examples of information developed independently during the investigation that corroborates many of their statements. The inmate witnesses discussed in this Affidavit have been convicted of one or more crimes, including potentially fraud convictions and other offenses, and were incarcerated at the time of the offense. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that REID violated Title 21, United States

Code, Section 841(a)(1), (b)(1)(C).

### III. AFFIANT BACKGROUND

4. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since May of 2017. Since June 2021, I have been assigned to the Drug Enforcement Administration (DEA) Tactical Diversion Squad (TDS), in the Oakland Resident Office. My training included a 21-week FBI academy in Quantico, Virginia, where I was trained in federal investigations. I am assigned to investigate drug cases.

5. As part of my training, I have received training and/or instruction in basic narcotic investigations, drug identification and detection, drug interdiction, familiarization with federal narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, informant development, and undercover operations.

6. Through my training and experience, and my discussions with other experienced law enforcement officers, I am familiar with the method of operation used by inmates who smuggle narcotics into jails and/or prisons, and the method by which they distribute narcotics to other inmates.

7. I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including the Target Offenses.

### IV. APPLICABLE STATUTES

8. Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) prohibits a person from knowingly distributing a mixture or substance containing a detectable amount of fentanyl.

9. The elements of a violation of possession with intent to distribute fentanyl (21 U.S.C. § 841(a)(1) and (b)(1)(C) are as follows: (1) the defendant knowingly distributed a mixture or substance containing a detectable amount of fentanyl and (2) the defendant knew that it was a mixture or substance containing a detectable amount of fentanyl or some other federally controlled substance.

### V. STATEMENT OF PROBABLE CAUSE

#### A. Background on Santa Rita Jail and REID

10. Santa Rita Jail ("SRJ") is a county jail located in Dublin, California, which is in the Northern District of California. SRJ is operated by the Alameda County Sheriff's Office.

11. On April 23, 2021, REID was arrested by San Leandro Police Department ("SLPD") officers during a traffic stop pursuant to an outstanding warrant. Following REID's arrest, law enforcement conducted a search of the vehicle and discovered approximately 7.2 grams of suspected fentanyl inside an earbud case suspected to belong to REID, as well as suspected methamphetamine on REID's person. REID was the passenger in the car, but officers believed the earbud case was hers because it was located directly in front of where REID was seated on the front passenger floorboard. After her arrest, REID was booked into SRJ.

12. At SRJ, after completing mandatory quarantine, REID was assigned to a female housing unit, Housing Unit 24, upper A-pod.[1] REID was incarcerated at SRJ until approximately May 28, 2021.

#### B. Initiation of the Investigation

13. On May 16, 2021, at approximately 12:48 pm, an SRJ inmate ("Inmate 1") informed SRJ housing control via the emergency intercom system that there was an unresponsive inmate in upper A-Pod. Paramedics responded to upper A-Pod where they found the inmate, Victim 1, unresponsive in her bunk. Victim 1 was pronounced dead at approximately 1:25 pm.

14. A toxicology report revealed that Victim 1 had several substances in her system at the time of her death, including fentanyl.

///

///

---

[1] Housing Unit 24 is divided into two sides: east and west side. The east side is a dormitory style pod divided into three pods: A, B, and C. Inside each pod, there are a number of bunk beds with a common bathroom.

### C.   REID Distributed Fentanyl to Inmate 2 and Victim 1 on May 16, 2021

15.   On or about August 30, 2021, investigators interviewed an inmate ("Inmate 2").[2] Inmate 2 is a current inmate at SRJ. Inmate 2 stated that the night before Victim 1's death, REID had provided fentanyl to both Inmate 2 and Victim 1. Inmate 2 explained that REID had three different types of fentanyl: pink, white, and green fentanyl that she stored in her vagina. In my training and experience, and based on my conversations with other law enforcement officers, I know that fentanyl often comes in different colors and the different colors can reflect different potencies. I also know that it is common for inmates who traffic narcotics inside of jails or prison to store the narcotics in their body cavities.

16.   According to Inmate 2, the night prior to Victim 1's death, REID gave the pink fentanyl to both Inmate 2 and the Victim 1. Inmate 2 told investigators that the pink fentanyl had no effect on Inmate 2 or Victim 1.

17.   Inmate 2 stated that on the morning of Victim 1's death, REID overheard Inmate 2 and Victim 1 discussing the fact that they had not experienced any effect from the pink fentanyl. In response, REID told Inmate 2 and Victim 1 that she was going to give them the white fentanyl which she called the "big dog." In my training and experience, and based on conversations with Inmate 2, I believe REID was referring to the fact that the white fentanyl was stronger than the pink fentanyl.

18.   Inmate 2 stated REID gave Victim 1 and Inmate 2 the white fentanyl and Inmate 2 and Victim 1 both snorted the fentanyl. Inmate 2 stated prior to snorting the fentanyl, Inmate 2, REID, and Victim 1 were standing around Inmate 2's bunk bed. REID took the fentanyl out of her bra and put it on a checkerboard on Inmate 2's bunk bed. Inmate 2 and Victim 1 then

---

[2]   ACSO deputies originally attempted to interview Inmate 2 on May 16, 2021, however Inmate 2 claimed to not have any information to provide. During Inmate 2's subsequent interview, on August 30, 2021, Inmate 2 told investigators that she lied because she was high during the first interview.

snorted the fentanyl off of the checkerboard. After Inmate 2 ingested the fentanyl, Inmate 2 described feeling extremely high and was worried about dying. Inmate 2 also stated that REID provided fentanyl to another inmate, Inmate 3, around the same time, but that Inmate 3 ingested the fentanyl on her own, not on Inmate 2's bunk.[3]

19. The day of Victim 1's death, after Victim 1 died, investigators seized a checkerboard, a white cardboard tube from a tampon, and white powder residue found near and around the checkerboard from Inmate 2's bunk bed.[4] All three items tested positive for fentanyl.

20. Security footage from SRJ on May 16, 2021, corroborates Inmate 2's statements. Investigators seized footage from upper A-pod's bathroom, and outside the upper A-pod. On the morning of May 16, 2021, REID can be seen on camera making multiple trips to bathroom area in the upper A-pod. While in the bathroom, REID can be seen hunched over, and she appears to be either inserting or removing something from her vaginal or anal cavity. A still image from the surveillance video is captured below:

---

[3] Inmate 3 was interviewed and initially denied knowing who supplied the fentanyl. However, in a subsequent interview, she told agents REID was the supplier of fentanyl and she kept the fentanyl in her vagina. She further stated that REID supplied her fentanyl on May 16, 2021, and that she also observed REID, Victim 1, and Inmate 2 huddled around their beds with a piece of paper on the day of Victim 1's death, and that she later noticed that Victim 1 appeared to be high.

[4] Based on my training and experience, and conversations with other agents, I know that the white cardboard tube is called a "tooter" by inmates and is used to snort narcotics, in this case fentanyl.



21. In addition, from approximately 8:57 a.m. until approximately 9:10 a.m., video surveillance appears to show REID, Inmate 2, and Victim 1 sitting and standing near Inmate 2's bunk, corroborating Inmate 2's statement that they snorted the fentanyl while standing around Inmate 2's bunk.

22. The surveillance video shows that after approximately 9:17 a.m., Victim 1 appears to be hunched over on the floor near her bed showing signs consistent with ingesting fentanyl. Victim 1 can later be seen motionless on the floor next to her bunk, with her head limp and slouched to the side.

23. REID can be seen on the surveillance footage appearing to check on Victim 1 multiple times. Inmate 2 can also be seen on surveillance footage from the bathroom, and appears to unable to stand up straight, consistent with being under the influence of a narcotic.

24. At approximately 12:47 p.m., around the same time Inmate 1 notified deputies

that Victim 1 was unconscious, the surveillance camera captured REID in the bathroom, performing actions consistent with a person retrieving something from her vagina and disposing of it.  Inmate 2 later told investigators REID told Inmate 2 and other inmates that REID had flushed the remaining fentanyl down the toilet.  Based on REID's actions captured by the surveillance camera, and Inmate 2's statements, I believe REID flushed the remaining fentanyl down the toilet.[5]

## CONCLUSION

25.     Based on the foregoing, I submit that there is probable cause to believe that on May 16, 2021, in the Northern District of California, REID knowingly distributed a mixture or substance containing a detectable amount of fentanyl to Inmate 2, and that REID knew that it was a mixture or substance containing a detectable amount of fentanyl or some other federally controlled substance, all in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

/s/ *Tyler Esswein*
Tyler Esswein
Special Agent
Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this  15th  day of November 2021.  This application and warrant are to be filed under seal.

HON. KANDIS A. WESTMORE
United States Magistrate Judge

---

[5]     REID's body was later searched, and investigators did not recover any fentanyl.