*ORIGINAL*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable JON S. TIGAR, Judge

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **Change of Plea** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CR 22-00142 JST |
| | ) | |
| KAMERON PATRICIA REID, | ) | Pages 1 - 37 |
| | ) | |
| Defendant. | ) | Oakland, California |
| _____ | ) | Friday, June 10, 2022 |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:               Stephanie M. Hinds, Esq.
                             United States Attorney
                             1301 Clay Street, Suite 340S
                             Oakland, California  94612
                    BY:  MOLLY PRIEDEMAN,
                             Assistant United States Attorney

For Defendant:               McGlenon Law Office
                             2401 - 44th Avenue, #6
                             San Francisco, California  94116
                    BY:  ANN H. MCGLENON, ATTORNEY AT LAW

Reported By:                 Raynee H. Mercado
                             CSR. No. 8258

    Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

```
1    Friday, June 10, 2022                              9:50 a.m.
2                    P R O C E E D I N G S
3         THE CLERK:  Now calling criminal case 22-142-JST-1,
4    United States of America versus Kameron Patricia Reid.
5       Counsel, please approach the podiums.  Starting with the
6    Government, state your appearance for the record.
7         MS. PRIEDEMAN:  Good morning, Your Honor.  Molly
8    Priedeman for the United States.
9         THE COURT:  Good morning.
10        MS. McGLENON:  Good morning, Your Honor.  Ann
11   McGlenon for Ms. Reid, who's present in court.
12        THE COURT:  Good morning.
13      Good morning, Ms. Reid.
14        THE DEFENDANT:  Good morning.
15        THE COURT:  Okay.  The matter's on calendar this
16   morning for change of plea.  I've been made aware through
17   court staff that the Government will be requesting immediate
18   remand.  The defendant has filed a motion that Ms. Reid remain
19   out of custody pending sentencing.  The order of proceedings
20   this morning -- even though it introduces a little unnecessary
21   suspense, but it's the way I have to do it -- is to take
22   Ms. Reid's plea if she wants to change her plea, and then we
23   can determine her custody status.
24      Ms. McGlenon, is it still Ms. Reid's wish to change her
25   plea this morning?
```

1          **MS. McGLENON:**  Yes.

2          **THE COURT:**  All right.

3          **MS. McGLENON:**  Oh, Your Honor, I -- well, I don't

4     know if this is the appropriate time.  I have a letter from

5     her sober living, if I could pass it to the Court.

6          **THE COURT:**  Would you show it to the Government

7     first, please.

8          **MS. McGLENON:**  Yes.

9               (Pause in the proceedings.)

10         **THE COURT:**  Great.  You'll hand that to Mr. Garcia.

11    He can hand it up to me.

12         **THE CLERK:**  Thank you.

13         **MS. McGLENON:**  Thank you.

14         **THE COURT:**  Thanks.

15              (Pause in the proceedings.)

16         **THE COURT:**  All right.  For the record, I just read a

17    letter from Ray Prieto who is the program director of a sober

18    living environment called Life House Recovery Homes who

19    indicates that Ms. Reid is a client and that she was admitted

20    into their program on April 13 after completing a 90-day

21    treatment plan at New Bridge Foundation.  That she is testing

22    randomly twice a week and going to NA and overall doing very

23    well.  That's not everything he says, but it's not a bad

24    summary.

25         Let's go ahead and put this -- Mr. Garcia, could you

1    actually file that on the docket of the case, please.

2              **THE CLERK:**  Sure.

3              **THE COURT:**  Thanks.

4       All right.  Ms. Reid, I'm going to ask you a whole bunch

5    of questions.

6              **THE DEFENDANT:**  Okay.

7              **THE COURT:**  And the point of the questions is not to

8    find out what the terms of the plea agreement are.  I actually

9    know what the terms are 'cause I read it.

10             **THE DEFENDANT:**  Okay.

11             **THE COURT:**  And they're in writing.  So the point of

12   the questions is really just to make sure of two things.

13   First, I want to make sure that you are convinced that this is

14   the right deal for you, that you had enough time to think

15   about it, that you have enough time to talk to your lawyer,

16   that she answered any questions that you had, that you know

17   what rights you're giving up, and that you understand the plea

18   agreement and that sort of thing.

19      And the second thing I want to make sure is that you did

20   it.  And you may think well, that's weird; I signed a plea

21   agreement.  Of course I did it.  But I got to tell you, for

22   every hundred times I've done this, there might be one time

23   where I get to that part of the hearing and I say, Did you

24   read paragraph two, and the person says, Yeah, I read it.  And

25   they say -- and I say, Well, did you do all the things that it

1    says in paragraph two, or I might even say, What did you do?

2    And the defendant says, I didn't do it, or I'm not guilty of

3    everything that's there, or something like that.  And then I

4    just stop because I don't ever want to take a plea from

5    someone that didn't do the thing they are accused of.  I think

6    they should go to trial, you know, and see if the Government

7    can prove it.  I don't want someone who doesn't think they're

8    guilty to plead guilty.

9       Does take all make sense?

10          **THE DEFENDANT:**  Yeah, makes perfect sense.

11          **THE COURT:**  So from what I've just said, you will

12   figure out that this hearing is really about you and what you

13   understand.  So if at any time you cannot hear something that

14   somebody says, would you just waive your hand around and say,

15   Judge, I didn't hear that.

16          **THE DEFENDANT:**  Yes.

17          **THE COURT:**  And if you don't understand something

18   that someone said, just because -- you don't understand

19   something someone says because you didn't their words clearly

20   or you heard the words but you didn't know what the words

21   mean, would you just say, Judge, I didn't understand that?

22          **THE DEFENDANT:**  Yes, I will.

23          **THE COURT:**  And lastly, I don't think this will

24   happen, but it might.  If you need talk to Ms. McGlenon, you

25   have the right to do that at any time.

```
 1              THE DEFENDANT:  Okay.

 2              THE COURT:  All you have to do is say, Judge, I want

 3    to talk to my lawyer.  And then you and Ms. McGlenon can step

 4    away from the microphone, you can have a conversation that no

 5    one else can hear, and then when you're done and you're ready,

 6    we'll resume.

 7              THE DEFENDANT:  Okay.

 8              THE COURT:  All right.  Would you raise your right

 9    hand for me, please.

10       Do you solemnly -- let me find this.  Oh, I think Mr.

11    Garcia is supposed to do this.

12              THE CLERK:  Do you want me to do it, Judge?

13              THE COURT:  Yes.  Would you administer the oath to

14    the defendant, please.

15              THE CLERK:  Sure.

16                       (Defendant sworn.)

17              THE CLERK:  Thank you.  You may put your hand down.

18              THE COURT:  Ms. Reid, do you understand that you're

19    now under oath, and if you answered any of my questions

20    falsely, your answers could later be used against you in a

21    prosecution --

22              THE DEFENDANT:  I do.

23              THE COURT:  -- for perjury or making false statement?

24       Would you say your full name, please.

25              THE DEFENDANT:  Kameron Patricia Reid.
```

1          **THE COURT:**  Ms. Reid, where were you born.

2          **THE DEFENDANT:**  In Grand Junction, Colorado.

3          **THE COURT:**  And how old are you.

4          **THE DEFENDANT:**  I'm 38 years old.

5          **THE COURT:**  How far did you go in school.

6          **THE DEFENDANT:**  Pardon?

7          **THE COURT:**  How far did you go in school?

8          **THE DEFENDANT:**  I got some college.

9          **THE COURT:**  Okay.  That tells me your reading and

10   writing is pretty strong; is that true?

11          **THE DEFENDANT:**  That's correct.

12          **THE COURT:**  Have you been treated -- well, I think I

13   know the answer to this question, but I'll ask you anyway.

14   Have you been treated recently for any mental illness or

15   addiction to alcohol or drugs of any kind.

16          **THE DEFENDANT:**  Yes, I have.

17          **THE COURT:**  And is that because you just completed

18   the New Bridge 90-day program and then went into the sober

19   living environment as I read in the letter.

20          **THE DEFENDANT:**  Yes, sir.

21          **THE COURT:**  Right now, this morning, are you

22   currently under the influence of any drug, medication, or

23   alcohol?

24          **THE DEFENDANT:**  No, sir.

25          **THE COURT:**  Are you --

1       **THE DEFENDANT:**  I take Suboxone.

2       **THE COURT:**  Oh, sorry.

3       **THE DEFENDANT:**  I take Suboxone.

4       **THE COURT:**  Oh, that was going to be my next

5   question, whether you're on medication-assisted treatment.

6       **THE DEFENDANT:**  Yes, I take Suboxone.

7       **THE COURT:**  Do you have a clear head this morning.

8       **THE DEFENDANT:**  I do, yes.

9       **THE COURT:**  I want to ask you about a couple of

10  documents.  The first is called the information.  It's just a

11  written statement of the criminal charges against you that was

12  filed on April 5th, 2022.  I'm going to hold it up.  I don't

13  know if you can see that.

14      **THE DEFENDANT:**  I can see that.

15      **THE COURT:**  Okay.  So that's -- that's the

16  information.  Have you received a copy of the information.

17      **THE DEFENDANT:**  I have, yes.

18      **THE COURT:**  And have you fully discussed the charges

19  against you and your case in general with Ms. McGlenon as your

20  lawyer?

21      **THE DEFENDANT:**  Yes, I have.

22      **THE COURT:**  Have you been fully satisfied with the

23  counsel representation and advice that she gave you?

24      **THE DEFENDANT:**  Yes, I am.

25      **THE COURT:**  The other document I want to ask you

1    about is the plea agreement.  And on the bottom -- I have the

2    original with me at the bench.  At the bottom of page 6, your

3    name is printed, and then there's a blue ink signature there.

4    Is that your signature?

5              **THE DEFENDANT:**  Yes, sir.

6              **THE COURT:**  And did you read this plea agreement

7    thoroughly before you signed it?

8              **THE DEFENDANT:**  Yes, sir.

9              **THE COURT:**  Did you talk about it with your lawyer

10   before you signed it?

11             **THE DEFENDANT:**  Yes, I did.

12             **THE COURT:**  Do you understand the terms of the plea

13   agreement?

14             **THE DEFENDANT:**  Yes, I do.

15             **THE COURT:**  Did anybody make you any promises about

16   your case that are not in here?

17             **THE DEFENDANT:**  No, they did not.

18             **THE COURT:**  There's no side deals.

19             **THE DEFENDANT:**  No, there's no side deals.

20             **THE COURT:**  There are two main kinds of plea

21   agreement.

22        Mr. Garcia, may I give you this?  Originals make me

23   nervous.  Thank you.

24             **THE CLERK:**  Sure.

25             **THE COURT:**  There are two main kinds of plea

1    agreement, and your plea agreement is pursuant to rule

2    11(c)(1)(C) of the Federal Rules of Criminal Procedure.  And

3    the prosecutor put that in the first sentence of the plea

4    agreement as a signal to me so I would know what kind of plea

5    agreement it is, and I want to talk about that for a second.

6          **THE DEFENDANT:**  Okay.

7          **THE COURT:**  So in this kind of plea agreement, what

8    is happening is that your lawyer and the prosecutor are

9    together asking that if I accept your guilty plea, I impose a

10    sentence of between 84 and 96 months.  That's right there in

11    paragraph eight.

12          **THE DEFENDANT:**  Yes.

13          **THE COURT:**  And as long as I do that, so I sentence

14    somewhere in that range, then I'm complying with this plea

15    agreement.  I'm not saying this in the best way.  I have to --

16    so that's what they want.  That's what they're asking me to

17    do.

18          **THE DEFENDANT:**  Yeah.

19          **THE COURT:**  I have to decide later after I've gotten

20    all the facts from the Probation Office and read your lawyer's

21    sentencing memorandum and read Ms. Priedeman's sentencing

22    memorandum, I have to decide do I think that is an appropriate

23    sentence in this case.  And if I do, I say, Well, I accept the

24    plea agreement, and then I impose sentence.

25      But let's say I don't think that's the right sentence in

1   the case.  Well, I don't have to accept the plea agreement.

2   And if that happens, you have the right to withdraw your plea.

3            **THE DEFENDANT:**  Okay.

4            **THE COURT:**  Say, well, if you're not going to give me

5   that sentence, then I don't want to plead guilty.  And you can

6   take your guilty plea back.  And then you'd -- you would be

7   starting over, and you could take the case to trial or try to

8   negotiate a different deal or what have you.

9        You could also say, Judge, I don't want to withdraw my

10  guilty plea.  Even though you said that's not the right

11  sentence, and even though I don't -- you wouldn't know what

12  sentence you were going to get 'cause I'm not allowed to tell

13  you, you could just say, Judge, I want to move forward anyway.

14  I don't want to withdraw my guilty plea.  You go ahead and

15  impose sentence.

16       Do you understand all that?

17           **THE DEFENDANT:**  Yes, I do.

18           **THE COURT:**  Did you go talk about that process with

19  Ms. McGlenon.

20           **THE DEFENDANT:**  Yes, we did.

21           **THE COURT:**  And she explained to you how that worked.

22           **THE DEFENDANT:**  Yes, she did.

23           **THE COURT:**  Okay.  And you understand that if I

24  rejected the plea agreement, and you decided to go forward

25  anyway, I would have the ability to sentence you to a higher

1    sentence than what's in the plea agreement or even a higher

2    sentence than your lawyer or someone else estimated.

3        Do you understand that?

4              **THE DEFENDANT:**  Yes, I do.

5              **THE COURT:**  Has anybody forced you to plead guilty or

6    threatened anybody close to you to get to you change your

7    plea.

8              **THE DEFENDANT:**  No.

9              **THE COURT:**  This crime that you're prepared to plead

10   guilty to which is distribution of fentanyl is a felony.  And

11   if you plead guilty, and I accept your plea, you'll be

12   convicted of that crime.  And that's -- adjudication could

13   deprive you of certain valuable civil rights such as the right

14   to vote, the right to hold public office, the right to serve

15   on a jury, and the right to possess any kind of firearm.

16       Do you understand that?

17             **THE DEFENDANT:**  Yes, I do.

18             **THE COURT:**  Ms. Priedeman, would you please state the

19   maximum possible penalty provided by law and any mandatory

20   minimum penalty.

21             **MS. PRIEDEMAN:**  Yes, Your Honor.  The maximum prison

22   term is 20 years.  The maximum fine is $1 million.  There's

23   also restitution.  Maximum supervised release term of life;

24   minimum supervised release term of three years.

25       A mandatory special assessment of $100 per felony count

1     and mandatory and discretionary denial of federal benefits

2     upon conviction of the drug offenses.

3            THE COURT:  Ms. Reid, have you understood the hearing

4     so far?

5            THE DEFENDANT:  Yes, I have.

6            THE COURT:  I want to talk about sentencing a little

7     bit more and how that works.  So if you do change your plea

8     this morning and you plead guilty, I'll set the matter for

9     sentencing several weeks in the future, and I'll refer the

10    case to the Probation Office for the preparation of a written

11    presentence report.  And we'll talk a little bit more about

12    that in a few minutes, but they'll gather a whole bunch of

13    information, and then they'll make a recommendation to me

14    about what the sentence is.  And they'll also perform a

15    calculation under the sentencing guidelines.  And that's where

16    I have to start.

17       Yes, ma'am.

18            THE DEFENDANT:  My hearing aid just died.  Can you

19    give me a second to change it?

20            THE COURT:  Yes.

21            THE DEFENDANT:  I got to change --

22                   (Pause in the proceedings.)

23            THE COURT:  Ms. Reid, everything working okay?

24            THE DEFENDANT:  Yeah, sorry about that.

25            THE COURT:  You don't have to worry.  I have all the

1    time in the world.

2              **THE DEFENDANT:**  Of all times to die on me.

3              **THE COURT:**  Yeah.  Okay.  So anyway, so I'll get that

4    material.  I'll get a memorandum from your lawyer.  I'll get a

5    memorandum from the prosecutor, and then I'll be ready to

6    impose sentence.

7         The first thing that I have to look at is the sentencing

8    guidelines.  The sentencing guidelines are published by the

9    federal government, and they recommend a sentence for every

10   federal crime.

11             **THE DEFENDANT:**  Yeah.

12             **THE COURT:**  As the crime gets more serious, the

13   recommended sentence gets higher.  As the crime is less

14   serious, it gets lower, and it's expressed as a range of

15   months.  So for a crime that's really not very serious, there

16   are crimes where the range is six to 12 months.  But there are

17   crimes where the range is 346 to 352 months or even higher, so

18   there's just a big spectrum.

19             **THE DEFENDANT:**  Okay.

20             **THE COURT:**  In addition to that, for the same crime,

21   if the defendant has a longer criminal history, the range goes

22   up.  And if they have a lower criminal history or lesser

23   criminal history, the range goes down.  So for the very same

24   crime, it might be -- well, I don't need to give you more

25   examples.  Do you understand the concept?

1      **THE DEFENDANT:**  I do understand, yes.

2      **THE COURT:**  Have you talked about that with

3   Ms. McGlenon?

4      **THE DEFENDANT:**  Yes, I have.

5      **THE COURT:**  So I have to start there, and I have to

6   figure out what is the appropriate range under the sentencing

7   guidelines.  And then I have to look at the factors in a law

8   called 18 U.S.C. section 3553(a).  And that statute lists all

9   kinds of factors such as the facts of the particular crime,

10  your personal history background, whether there are any

11  victims in the case, how likely I think it is that you will

12  commit another crime in the future, what other people who've

13  done the same crime were sentenced to, and a number of factors

14  like that.

15     Do you understand that after I've considered those

16  factors, I have the authority to sentence you to a higher or a

17  lower sentence than what's provided in the guidelines?

18     **THE DEFENDANT:**  Yes, I do.

19     **THE COURT:**  And in fact, as I understand it, the

20  sentence that the parties are recommending in this case is

21  below a guideline sentence.

22     Is that right?

23     **MS. PRIEDEMAN:**  No, Your Honor.  Not with the charged

24  offenses.

25     **THE COURT:**  Oh, I see.  Okay.

 1          Well, then that observation is -- is not right.  I don't

 2     know if you know anything about parole which they have in the

 3     California state prison system, but in the federal system,

 4     parole was abolished, and if you're sentenced to prison in

 5     this case, you will not be released on parole.

 6          Do you understand that?

 7               **THE DEFENDANT:**  Yes, I do.

 8               **THE COURT:**  Now, ordinarily, you and the Government

 9     would have the right to appeal your conviction or your

10     sentence.  Well, the Government wouldn't appeal a conviction.

11     But you could appeal your conviction or your sentence, or

12     sometimes other orders that I or another judge in this court

13     made.  But in this agreement, in paragraph four, you're giving

14     that right up.

15               **THE DEFENDANT:**  I understand that.

16               **THE COURT:**  You're not going to be able to appeal

17     your conviction or your sentence or any aspect of your

18     sentence except you could claim that your lawyer was

19     ineffective or you could claim that your sentence violated the

20     plea agreement applicable law or the Constitution; but with

21     those exceptions, you're waiving your right to appeal.

22          Do you understand that?

23               **THE DEFENDANT:**  Yes, I do.

24               **THE COURT:**  You're also waiving your right to file a

25     collateral attack.  A collateral attack works like an appeal.

1   It just involves your filing a petition or a motion with this

2   court or another court and asking the court to set aside your

3   sentence or set aside your conviction because the judge made a

4   legal mistake that injured your rights.  But with that same

5   exception of claiming that your lawyer is ineffective, you're

6   giving that right up.

7       Do you understand?

8           **THE DEFENDANT:**  Yes I do.

9           **THE COURT:**  I want to go over some other rights

10  you'll being giving up.  I'm not going to stop after each one,

11  but I want to you listen carefully because they're all really

12  important.  These are the rights that make our criminal

13  justice system fairer than the criminal justice systems that

14  don't have these rights.

15      You have the right to plead not guilty to any crime

16  charged against you and to persist in that plea.  Persist

17  means you never to have change your plea or admit anything.

18  You can just stand on your not guilty plea and see if the

19  Government can prove its case.

20      You have the right to a trial by jury.  At the trial, you

21  would be presumed to be innocent and the Government would have

22  to prove your guilt beyond a reasonable doubt.  You wouldn't

23  to have prove anything 'cause you have no burden of proof.

24      You'd have the right to the assistance of a lawyer for

25  your defense, and we'll appoint a lawyer if you need us to not

1    just for trial but for every other stage of the case.

2         You have the right to see and hear all the witnesses and

3    have them cross-examined in your defense.

4         You have the right on your own part to decline to testify

5    unless you voluntarily elect to do so in your own defense.

6    What that means is if you want to testify, you can.  But if

7    you don't want to testify, nobody can make you.  The

8    prosecutor can't make you.  Even your own lawyer can't call

9    you as a witness.

10              **THE DEFENDANT:**  Okay.

11              **THE COURT:**  'Cause that decision stays totally with

12   you.  And I said a second ago that you don't have to put on

13   any evidence, and that's true.  But if you wanted to put on

14   evidence, you could use the Court's subpoena power to make

15   witnesses come in and testify for you even if they didn't want

16   to, and you could make them bring in evidence if they had

17   stuff you wanted to show the jury.

18        Do you understand you have all these rights?

19              **THE DEFENDANT:**  Yes do I.

20              **THE COURT:**  Do you understand that if you plead

21   guilty this morning you will have waived or given up these

22   rights and we're not going to have a trial.

23              **THE DEFENDANT:**  Yes, I do.

24              **THE COURT:**  Just a couple more things about these

25   rights.

1    Let's say that you didn't put on any evidence or you
2    didn't testify.  Nobody could say anything about that.  The
3    prosecutor, for example, couldn't say to the jury, Hey, what
4    about Ms. Reid, she was there.  Wonder what her side of the
5    story is.  And they couldn't say, You saw all of our evidence;
6    where's Ms. Reid's evidence.  'Cause if anybody did any of
7    those things, if the judge did that or the prosecutor, it
8    would make it seem like you didn't have the right to remain
9    silent or you had a burden of proof, but that's not right.
10   And so nobody can comment on your -- the exercise of your
11   rights.
12       Do you understand that?
13           **THE DEFENDANT:**  Yes, I do.
14           **THE COURT:**  In this plea agreement, you propose to
15   plead guilty to distribution of fentanyl in violation of
16   Title 21, United States Code Sections 841(a)(1) and 841(b)(1)
17   C.
18       If you didn't plead guilty, the Government would have to
19   prove two things at trial to the satisfaction of a jury.
20   First, that you knowingly possessed fentanyl, and secondly,
21   that you distributed it to another person.  Do you understand
22   that the Government would have to prove both those things
23   beyond a reasonable doubt if you didn't change your plea.
24           **THE DEFENDANT:**  Yes, I do.
25           **THE COURT:**  Do you understand if you plead guilty

1    this morning, you're admitting both of those things and they

2    don't to have prove anything.

3              **THE DEFENDANT:**  Yes, I do.

4              **THE COURT:**  Ms. Reid, the facts of this case made a

5    big impact on me.  I don't think that surprises you.  As I --

6    I think I can just do this from recollection; I don't even

7    think I need look down at the plea agreement.

8         As I understand it, you were in custody at Santa Rita

9    jail, and you were dealing fentanyl inside the jail.  And it

10   is a very sad fact that it is not hard to get drugs in a jail

11   or prison often, and you were a drug dealer inside of

12   Santa Rita, and you were dealing fentanyl.  And there were two

13   persons who are referred to as victim one and victim two, and

14   they purchased fentanyl from you 'cause they knew that you

15   were a fentanyl dealer.  And you were storing the fentanyl in

16   your vagina so that it could not be detected by sheriff's

17   deputies.  And you gave pink fentanyl to victim one and victim

18   two, and they reported to you that the fentanyl wasn't that

19   good and that they didn't get high enough.  So you said, Well,

20   I have some better fentanyl for you, which is the white

21   fentanyl, and you gave them the white fentanyl.  And victim

22   number two said words to the effect that she was so high she

23   felt like she was dying, but she didn't die.  Victim

24   number one on the other hand went into medical distress in

25   front of you, and you saw what was happening, and you elected

1    not to call the guards because you were worried that you were

2    going to get in trouble.  And victim number one died.  That's

3    my memory of what's in the plea agreement.  Did that -- all

4    that happen?

5              **THE DEFENDANT:**  Yes, sir.

6              **MS. PRIEDEMAN:**  Your --

7              **THE COURT:**  And focusing on the elements of the

8    crime, you knew that what you were giving victim one and

9    victim two was fentanyl, correct.

10             **THE DEFENDANT:**  Yes, sir.

11             **THE COURT:**  Do you understand that the Government is

12   not charging you with a unlawful killing offense in this case

13   and that the death of victim number one is not part of the

14   things that the Government would need to prove in order to get

15   a conviction of this crime.  But I'm allowed to take those

16   facts that are in paragraph two into account in determining an

17   appropriate sentence.

18       Do you understand that?

19             **THE DEFENDANT:**  Yes, I do.

20             **THE COURT:**  And I may not have exactly stated

21   paragraph two correctly, so I just want to sort of do belt and

22   suspenders on this.  Did you read paragraph two carefully?

23             **THE DEFENDANT:**  Yes, I did.

24             **THE COURT:**  Is everything that it states in there

25   about you and what you knew and what you did true and correct?

1     **THE DEFENDANT:**  Yes, sir.

2     **THE COURT:**  Is it also true following the death of

3     victim one, that you had possession of some remaining fentanyl

4     and you flushed it down the toilet.  Is that true?

5     **THE DEFENDANT:**  Yes, sir.

6     **THE COURT:**  And then investigators who were looking

7     into why victim one died came by and talked to you, and you

8     told them that you did not actually give the fentanyl to

9     victim one.  Is that true?

10     **THE DEFENDANT:**  Yes, sir.

11     **THE COURT:**  Ms. Priedeman, would you please tell me

12     what the Government would prove in this case if Ms. Reid did

13     not change her plea.

14     **MS. PRIEDEMAN:**  Yes, Your Honor.

15     The Government would prove that from approximately

16     April 23rd, 2021, to May 28th, 2021, Ms. Reid was incarcerated

17     at Santa Rita jail which is within the Northern District of

18     California.

19     While Ms. Reid was incarcerated, she distributed fentanyl

20     to several inmates at the jail, and she stored the fentanyl in

21     her vagina to avoid detection.  On or about the evening of

22     May 15th, 2021, she provided pink fentanyl to both inmate two

23     and victim one.  Both inmate two and victim one ingested the

24     pink fentanyl, and the next morning on May 16th, 2021, the

25     Government would prove that Ms. Reid overheard victim one and

1    inmate two discussing the fact that they had not experienced

2    any effect from the pink fentanyl.  The Government would prove

3    that in response, Ms. Reid told them that she was going to

4    give them white fentanyl, which she knew was stronger than the

5    pink fentanyl.

6        The Government would then prove that Ms. Reid subsequently

7    gave both inmate two and victim one the white fentanyl, and

8    both inmate two and victim one snorted the fentanyl.  After

9    snorting the fentanyl, the Government would prove that both

10   inmate two and victim one were visibly intoxicated; and

11   shortly after taking the fentanyl, Ms. Reid observed that

12   victim one was motionless and unconscious near her bunk.

13       The Government would prove that despite the fact that

14   Ms. Reid suspected that victim one was overdosing on the

15   fentanyl, she did not call for assistance because she did not

16   want to get in trouble.  The Government would also prove that

17   eventually after several hours, another inmate, inmate one,

18   called for assistance.  Paramedics responded, and they found

19   victim one unresponsive, and she was eventually pronounced

20   dead.

21       The Government would also prove that victim one's use of

22   the fentanyl provided by Ms. Reid caused victim one's death.

23   The Government would also prove that after victim one

24   overdosed, Ms. Reid flushed the remaining fentanyl down the

25   toilet.  When she was questioned by investigators, she lied

1    and told them she had not distributed the fentanyl to victim

2    one.

3            **THE COURT:**  Thank you, Ms. Priedeman.

4        Does anyone wish the Court to make any further record

5    before I ask the defendant for her change of plea?

6        Ms. Priedeman?

7            **MS. PRIEDEMAN:**  No, Your Honor.

8            **THE COURT:**  Ms. McGlenon?

9            **MS. McGLENON:**  No, Your Honor.

10           **THE COURT:**  Ms. Reid, I'm now going to ask you for

11   your plea in the matter of the United States of America vs.

12   Kameron Patricia Reid, case number 22CR142JST, to count one of

13   information in this case, which charges you with distribution

14   of fentanyl in violation of sections 841(a)(1) and

15   841(b)(1) -- (b)(1)(b)(c) of Title 21.  How do you plead?

16           **THE DEFENDANT:**  Guilty.

17           **THE COURT:**  I accept that plea.  I don't make a

18   decision now whether to accept the plea agreement, but I

19   accept your plea, and I find you fully competent and capable

20   of entering an informed plea.  I find that you are aware of

21   the nature of the charges against you and the consequences of

22   your plea, and that your guilty plea is a knowing and

23   voluntary plea supported by an independent basis in fact

24   containing each of the essential elements of the offense.  I

25   therefore find you guilty of that offense.

1    As we discussed earlier, I'm going to refer the case to

2    the Probation Office for the preparation of a written

3    presentence report.  We'll set that date in just a minute.

4    The purpose of that report is to help me figure out what a

5    good sentence in the case is.  The Probation Office will ask

6    you to give them information for the report.  You can have

7    your lawyer with you any time you're talking to Probation.

8    It's important that you be thorough and prompt and candid when

9    you give them information because I put a lot of weight on

10   what they say.

11        **THE DEFENDANT:**  Okay.

12        **THE COURT:**  They're going to prepare it in draft form

13   before they give it to me, and they'll give a copy to

14   Ms. Priedeman, and they'll give a copy to you and your lawyer.

15   If either party thinks that there are things that are missing

16   or there are mistakes, they have a chance to tell that to the

17   Probation Office, and usually all that gets worked out before

18   I see the report.

19        But if there are any objections that are remaining, then

20   I'll resolve those on the sentencing dates.  There are victims

21   in this crime.  They have the right to be heard at sentencing.

22   That can take different forms.  Victim one's family or victim

23   two can come to court in person if they want to, and then they

24   can speak to me from the microphone like you're doing now, or

25   they can submit written statements to the prosecutor or to the

1   Probation Office, and those can be read into the record in

2   court.  You should be aware that they will have the right to

3   be heard.

4       You also have the right to speak, and you don't need to

5   make that decision now.  When I'm imposing sentence, that will

6   be the last thing I do.  I'll just ask you if you want to

7   address me, and at that time you can decide that you do want

8   to address me directly or you might decide that you want your

9   lawyer to do all the talking.

10      That, I think, leaves the question of Ms. Reid's custody

11  status pending sentencing.  I think I need to determine that

12  before I set a sentencing date.

13      Ms. Priedeman, let me hear first from the Government.

14          **MS. PRIEDEMAN:**  Yes, Your Honor.  So given the nature

15  of Ms. Reid's conviction, remand here is mandatory unless the

16  Court finds that she's not a danger to the community and

17  there's exceptional circumstances.

18      Given the nature of the crime, what Ms. Reid has just

19  admitted to, the Government believes Ms. Reid is a danger to

20  the community and there's no exceptional circumstances.

21      The crime here is -- is really callous.  The distribution

22  of fentanyl is dangerous in and of itself.  Fentanyl is an

23  extremely, extremely dangerous drug.  Here Ms. Reid

24  distributed fentanyl twice.  The first time it wasn't strong

25  enough, so she distributed again.  She then watched as the

1    victim was essentially dying in front of her and didn't do

2    anything to try to mitigate what had happened because she was

3    afraid of getting in trouble.

4        So I think she -- she is a danger -- that makes her a

5    danger to the community.  But also when you look at

6    exceptional circumstances, when you look at the *Garcia* case

7    that I believe defense cited, some of the factors that the

8    Court could look at are was the defendant's conduct

9    aberrational?  Were they mitigating circumstances?  Here, I

10   don't think defendant's conduct was aberrational.  She has a

11   history of drug-related offenses, and there really aren't

12   mitigating circumstances.  I think quite the opposite; there's

13   aggravating circumstances in this case.

14       Some of the other factors that *Garcia* notes are -- are

15   there particular hardships that would be implicated if she was

16   remanded to custody.  I'm not aware of any illnesses or

17   incapacitations that would make that an issue.  I think if I

18   understand defense's argument, it's two fold.  It's one, that

19   she is completing a rehabilitation program.  And also, that

20   she, given the ongoing, I believe, civil lawsuit, she's

21   concerned about being incarcerated.  So I want to address both

22   of those points briefly.

23       I don't think -- while I commend Ms. Reid for pursuing

24   rehabilitation and drug treatment -- I think that's a good

25   thing, and I hope she continues to focus on that -- I don't

1    think that alone is an exceptional circumstance.

2        And as to the civil lawsuit, my understanding is that

3    she's not a named party in the lawsuit, I think.

4        Is that correct, Ms. McGlenon?

5            **MS. McGLENON:**  She is named in the suit, but she is

6    not a party to it.  She's named in paragraph nine, I believe.

7            **MS. PRIEDEMAN:**  Right.  So she's not a named party.

8    I'm not -- I'm not entirely sure what the concern is.  I don't

9    think there's a concern of retaliation by the prison itself

10   given that she's not a named party.

11       And if there is concerns about safety from inmates or

12   something like that, I think that's something that Santa Rita

13   could address.  I don't think that by itself is an exceptional

14   circumstance.

15       So for all those reasons, the Government thinks remand is

16   appropriate and there's no exceptional circumstances in this

17   case.

18           **THE COURT:**  Thank you, Ms. Priedeman.

19       Ms. McGlenon.

20           **MS. McGLENON:**  Your Honor --

21           **THE COURT:**  If you could get a little closer to the

22   microphone, please.

23           **MS. McGLENON:**  Oh, I'm sorry.

24           **THE COURT:**  But I would ask that you'd put your mask

25   back on.

 1              **MS. McGLENON:**  Oh, I'm sorry.  Yesterday they said

 2      take it off if we're vaccinated.

 3              **THE COURT:**  I know everyone has their own policy.

 4              **MS. McGLENON:**  Okay.

 5              **THE COURT:**  Yeah, I'm sort of the hawkish on these

 6      COVID measures.

 7              **MS. McGLENON:**  That's fine with me.  I am, too.

 8          Your Honor, I would just refer to -- to paragraph 29 of

 9      the civil complaint which gives a date of April 23rd, 2021, as

10      her -- as Ms. Reid's booking date.  And they alleged that she

11      smuggled drugs into the jail and was able to do so as a result

12      of defendant being -- the County of Alameda chronically

13      inadequate drug screening search and detection policy.  They

14      were informed and believe that those policies directly caused

15      and contributed to the ten drug-related deaths at Santa Rita

16      including the -- the plaintiff in that case.

17          In addition -- and clearly she has not received any

18      threats; no one has said anything to her.  But -- oh, and the

19      other thing I wanted to correct is the Court has referred to

20      two victims, but I believe it's victim one and is it witness

21      two?

22              **MS. PRIEDEMAN:**  Inmate two in the plea agreement.

23              **MS. McGLENON:**  Inmate two.  I wouldn't -- I'm not

24      sure that the inmate two was considered to be a victim.  But

25      in any case, I believe that Ms. -- Ms. Reid's incredible

1    progress, and she and I met several times in -- in Berkeley

2    when she was at New Bridge.  And she is the one who wanted to

3    take this -- take this deal.  She is -- has acknowledged her

4    feelings about this whole case, and she wanted to plead guilty

5    and held that has helped her with ability to proceed with her

6    sober -- her sober program.

7        Mr. -- Mr. Prieto who wrote the letter is -- is here in

8    the court as is her house manager.  She's been doing very

9    well.  While she has not had any threats at Santa Rita, she is

10   afraid to go back because it's not just the officers who are

11   going to be aware of who she is and what happened.  The

12   inmates will be aware.  And she does not want to be a target,

13   and she also -- and I believe that those are exceptional

14   circumstances.  Her -- her good work in her sobriety, and --

15   and she will show up.  I know that.  And she's -- she will

16   continue doing her work at the sober living and -- and in

17   addition, her -- her safety and capacity at -- at Santa Rita.

18       I did suggest in my conclusion, and this was a discussion

19   that we had -- actually all three of us at separate times --

20   that if the Court wants to or chooses to incarcerate Ms. Reid,

21   that our preference would be that she be able to go into

22   federal custody at Dublin away from Alameda County, away from

23   the Sheriffs, and -- and we could deal with it that way, and

24   she would get custody credit.  But our preference is that she

25   stay out and work on her sobriety and -- and come back for

1   sentencing and -- and she knows, she's well aware of what

2   she's facing and is ready to face it.  She just does not want

3   to go to Santa Rita.

4            THE COURT:  Thanks, Ms. McGlenon.

5        Ms. Reid, how long have you been sober now?

6            THE DEFENDANT:  I'm sorry, what's that?

7            THE COURT:  How long have you been sober now.

8            THE DEFENDANT:  I'll be -- I'm six months this month.

9            THE COURT:  You said -- remind me, you're 38?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  How long have you been using opiates.

12           THE DEFENDANT:  About 20 years.

13           THE COURT:  What was the -- how old were you when you

14   first used.

15           THE DEFENDANT:  I was 19 when I first used heroin.

16           THE COURT:  Okay.  Have you also done pills?

17           THE DEFENDANT:  I did pills, too, yes.

18           THE COURT:  What's the longest period of sobriety you

19   had.

20           THE DEFENDANT:  Two years.

21           THE COURT:  Wow.  What happened?  That's a long time

22   for an opiate user.  Why were you able to stay sober for two

23   years.

24           THE DEFENDANT:  I lost my daughter to CPS, and I

25   relapsed after she was adopted.

1          **THE COURT:**  I see.

2      You were a mom.

3          **THE DEFENDANT:**  Yes, I am.

4          **THE COURT:**  But you were -- so it sounds like you

5      were using and then you stopped and then you started using

6      again once your daughter was adopted.

7          **THE DEFENDANT:**  Yes, sir.

8          **THE COURT:**  But what is it that got you to stop in

9      the first place?  Do you remember?  Stop using I mean.

10         **THE DEFENDANT:**  Just the will to -- to change my

11     life.

12         **THE COURT:**  How long ago was that?

13         **THE DEFENDANT:**  Five years ago.

14         **THE COURT:**  Is it five years ago that you started

15     being sober or that you started using.

16         **THE DEFENDANT:**  Five years ago I relapsed.

17         **THE COURT:**  I see.  Okay.

18      Is the matter submitted, Ms. Priedeman?

19         **MS. PRIEDEMAN:**  Yes, Your Honor.

20         **THE COURT:**  Ms. McGlenon?

21         **MS. McGLENON:**  Yes, Your Honor.

22         **THE COURT:**  Don't mean to be melodramatic about this

23     in order to say this is a terrible crime.  And no one

24     disagrees about how terrible it was.  It's horrible in so many

25     different ways.  It is horrible that there continue to be --

1   there continues to be the availability of drugs and alcohol in

2   carceral settings.  That this incident of drug dealing led to

3   somebody's death is terrible.  That Ms. Reid watched it happen

4   is the most terrible.

5       The question of punishment is not before the Court today.

6   The parties have agreed within fairly narrow confines what

7   they think the sentence in the case should be.  They have

8   measured the terribleness of the conduct and attempted to

9   define a punishment that is appropriate to the terribleness of

10  the conduct.  So that is not my job this morning.

11      I am going to leave Ms. Reid out of custody pending

12  sentencing, and I want to make a very clear record because if

13  I'm not doing the right thing, I want the Ninth Circuit to

14  tell me.  I am not persuaded that Ms. Reid is under a

15  particular threat at Santa Rita that is of any greater

16  magnitude than the threat faced by any other inmate of that

17  institution.

18      I am not persuaded that the fact that Ms. Reid was

19  mentioned in a civil lawsuit has any bearing on anything that

20  is relevant to this morning's proceedings.

21      I do think that in this circumstance, my predominant job

22  is to make my community safer.  That's my job.  And I think,

23  based on what I've read and my judicial life experience, that

24  making sure that Ms. Reid has the longest possible period of

25  assisted sobriety before she begins serving the sentence,

1    which she freely acknowledges she deserves, is the path that

2    is most likely to allow her, when she completes her sentence

3    and has returned to the community, to deal with the inevitable

4    triggers that someone who is in recovery faces.

5        I don't need to put on the record what are the bad things

6    that could happen if Ms. Reid uses again because the facts

7    leading up to her guilty plea themselves are more terrible

8    than anything that I could have imagined.

9        So the question I have to ask myself is:  Which is the

10   path that is most likely to enhance or increase the

11   defendant's ability to follow the law after she completes her

12   sentence.

13       And the binary question this morning is whether that is

14   allowing her to continue in treatment or interrupting her

15   treatment.  Stated that way, the answer seems pretty obvious

16   to me.

17       The Government does not contend how -- does not contend --

18   does not contest, excuse me, that Ms. Reid is doing well where

19   she is.  That's why I have no need to hear from her house

20   manager or Mr. Prieto.  And I don't begrudge the Government

21   its position in this case.  This crime was terrible, and the

22   Government is well within its rights to take the position its

23   taking.

24       And so I think where we are is that I have just a

25   different good-faith view than the Government does about

1    what's likely to keep this community safe.

2        I do find that there is clear-and-convincing evidence that

3    Ms. Reid is not likely to flee or pose a danger to the safety

4    of any person or the community if released under section 3142B

5    or 3142C.

6        I do find exceptional circumstances.  The basis for that

7    are the treatment that she is currently receiving and my

8    belief that that treatment is more likely to produce a lack of

9    recidivism than interrupting that treatment will.

10       Ms. Reid, I don't think you need me to say this, but I

11   think that I need to anyway.  We're going to set a sentencing

12   date in a minute.  If you were to violate the terms and

13   conditions of your pretrial release which will continue until

14   sentencing, or if you were not to show up at sentencing, the

15   consequences to you of that would be so much more severe than

16   anything that's in this plea agreement.  And I believe your

17   lawyer.  You know what happened in this case, and you know

18   there's a price for it, and you're ready to pay that price.

19   So I'm not saying that 'cause I think you need to be scared;

20   I'm saying it because it just needs to be said.

21           **THE DEFENDANT:**  Okay.

22           **THE COURT:**  Mr. Garcia, would you please suggest a

23   sentencing date.

24           **THE CLERK:**  Sure, Judge.

25       September 30th, Friday at 9:30?

```
 1          MS. McGLENON:  Your Honor, I'm going to be in
 2   New York on September 30th.
 3          THE COURT:  I'll suggest a different date if you'll
 4   give me a moment.
 5          MS. McGLENON:  Yes.  After is better, but --
 6          THE COURT:  Well, I --
 7          MS. McGLENON:  I have something here on
 8   September 15th, so any --
 9          THE COURT:  No, no, I won't -- I won't -- I won't be
10   here myself on September 15th.  How about October -- if the
11   parties don't mind, I'd actually like to push it back to
12   October 28th.  The parties available?
13          MS. McGLENON:  Yes.
14          THE COURT:  Ms. Priedeman?
15          MS. PRIEDEMAN:  Yes, Your Honor.
16          THE COURT:  October 28th at 9:30 a.m.
17       I want to say one more thing on this question of
18   exceptional circumstances.  As I said earlier, it's important
19   to me that Ms. Reid be placed in an environment where she is
20   least likely to use.  The facts of this case show quite
21   clearly that Santa Rita is not that place.
22       Further proceedings for the record this morning,
23   Ms. Priedeman?
24          MS. PRIEDEMAN:  Nothing from the Government, Your
25   Honor.
```

1          **THE COURT:**  Ms. McGlenon?

2          **MS. McGLENON:**  No, Your Honor.

3          **THE COURT:**  All right.  Court's in recess.

4     Ms. Reid, keep up the good work.

5          **THE DEFENDANT:**  Thank you, Your Honor.

6          (Proceedings were concluded at 10:38 A.M.)

7                        --o0o--

8

9

10                 <u>**CERTIFICATE OF REPORTER**</u>

11

12          I certify that the foregoing is a correct transcript

13     from the record of proceedings in the above-entitled matter.

14     I further certify that I am neither counsel for, related to,

15     nor employed by any of the parties to the action in which this

16     hearing was taken, and further that I am not financially nor

17     otherwise interested in the outcome of the action.

18

19     _____

20          Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

21                    Friday, June 24, 2022

22

23

24

25