1   STEPHANIE M.  HINDS (CABN 154284)
    United States Attorney
2
    THOMAS A. COLTHURST (CABN 99493)
3   Chief, Criminal Division

4   MOLLY K. PRIEDEMAN (CABN 302096)
    Assistant United States Attorney
5
        1301 Clay Street, Suite 340S
6       Oakland, California 94612
        Telephone: (510) 637-3680
7       FAX: (510) 637-3724
        molly.priedeman@usdoj.gov
8

9   Attorneys for United States of America

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                  OAKLAND DIVISION

13  UNITED STATES OF AMERICA,          )   **CASE NO. 22-CR-00142 JST**
                                        )
14          Plaintiff,                  )
                                        )   **UNITED STATES' SENTENCING**
15      v.                              )   **MEMORANDUM**
                                        )
16  KAMERON PATRICIA REID,              )
                                        )   Hearing Date: October 28, 2022
17          Defendant.                  )   Time:  9:30 am
    _____ )   Judge: Hon. Jon S. Tigar
18

19  **I.      INTRODUCTION**

20          On May 16, 2021, while incarcerated at Santa Rita Jail (SRJ), the defendant Kameron Patricia

21  Reid, distributed fentanyl to multiple inmates.  The consequences were catastrophic.  One of the women

22  overdosed and died.  Despite that fact that Reid watched the victim overdose, Reid didn't call for help

23  out of a fear of getting in trouble.  It wasn't until hours after the victim began overdosing that another

24  inmate called for assistance, but by then, it was too late.  The victim was announced dead shortly after

25  the paramedics arrived.  Reid's decision to distribute fentanyl demonstrated a reckless disregard for

26  human life.  Her decision not to own up for her mistake and call for help was callous, selfish, and cruel.

27          There are no words to describe the heartbreak and tragedy that flowed from Reid's decision to

28

distribute fentanyl.  The victim in this case was a daughter, a mother, and a sister.[1]  This prosecution cannot hope to bring back the victim, take away the pain her family has had to endure, or to redress the harm that Reid's actions caused.  What it can do, and what it has done, is to hold Reid accountable for the harm and pain her actions have caused, and to discourage Reid and others from selling fentanyl in the future.

The parties reached a binding plea agreement in this case, under Rule 11(c)(1)(C) with a range of 84 to 96 months.  These ranges are consistent with penalties California imposes for defendants convicted of voluntary manslaughter and gross vehicular manslaughter while intoxicated, which are crimes with analogous mens rea components.  The government recommends the high end of the parties' agreed range, 96 months, followed by three years of supervised release on the conditions Probation recommends.

## II.    BACKGROUND

### A.    Offense Conduct

On April 23, 2021, Reid was arrested by San Leandro Police Department Officers pursuant to an outstanding warrant.  PSR ¶ 7.  During a search of her person and vehicle, officers found fentanyl and methamphetamine.  *Id.*  After her arrest, Reid was booked into Santa Rita Jail (SRJ).  *Id.*  ¶¶ 7, 8.  While at SRJ, Reid stored fentanyl in her vagina and distributed it to several other inmates.  Plea Agreement ¶ 2.

On May 15, 2021, Reid distributed "pink"[2] fentanyl to two different inmates, Inmate 2 and Victim 1.[3]  PSR ¶ 10.  After learning that the "pink" fentanyl had little effect on Inmate 2 and Victim 1, the next day, on May 16, 2021, Reid gave Inmate 2, Victim 1, and another inmate, Inmate 3, "white" fentanyl, which she knew was stronger than the pink fentanyl and which she referred to as the "big dog." *Id.* ¶ 12; Plea Agreement ¶  2. Another inmate reported seeing Reid, Inmate 2, and Victim 1, standing around their beds with paper.  PSR ¶ 10.  Inmate 2 and Victim 1 snorted the fentanyl off of a

---

[1] Several of the victim's family members will be present and wish to speak at Reid's sentencing.

[2] Fentanyl often comes in different colors that are indicative of different potencies.  PSR ¶ 10.

[3] The same day, another inmate was strip-searched and a small bindle of fentanyl was recovered from her vaginal cavity.  The inmate later admitted that she had also acquired the fentanyl from Reid.

checkerboard.  *Id.* ¶ 12.  After ingesting the fentanyl, Inmate 2 reported feeling extremely high and was worried about dying.  PSR ¶ 12.  Both Victim 1 and Inmate 2 were visibly intoxicated from the fentanyl. Plea Agreement ¶ 2.  Surveillance footage from SRJ at approximately 9:17 am that day shows Victim 1 hunched over on the floor near her bed, showing signs consistent with fentanyl ingestion.  PSR  ¶ 16. Reid can be seen appearing to check on Victim 1 on multiple occasions.  *Id.*  Despite the fact that Reid suspected that Victim 1 was overdosing on fentanyl, she did not call for help because she did not want to get in trouble.  Plea Agreement ¶  2.  At approximately 10:43 am, *after* Victim 1 was visibly overdosing, Reid can be seen holding paper in front of a different inmate while she is on the toilet, consistent with the distribution of narcotics.  PSR ¶ 16.  At approximately 12:48 pm, another inmate finally called for help and reported that Victim 1 was unresponsive.  Paramedics pronounced Victim 1 dead at 1:25 pm. PSR ¶ 9.  The fentanyl distributed by Reid caused Victim 1's death.  Plea Agreement ¶ 2; PSR ¶ 18. After Victim 1 overdosed, Reid flushed the remaining fentanyl down the toilet, and lied to investigators about her involvement in Victim 1's death.  Plea Agreement ¶ 2.

### B. Post-Offense Conduct

On June 10, 2022, Reid plead guilty.  Reid's pretrial officer requested that she report for drug testing *prior* to her change of plea hearing.  PSR ¶ 5.  However, Reid did not report for drug testing until *after* the change of plea hearing.  *Id.*  During the Change of Plea hearing, Reid told the Court she was not on any drugs, and had been sober for six months.  *Id.*  Immediately following her statements to the Court, Reid reported to pretrial services and tested positive for fentanyl.  *Id.*  Reid agreed to self-surrender, and has been in custody since June 13, 2022.  *Id.*

### C. Sentencing Guidelines

On October 14, 2022, the Probation Office issued the Final PSR.  Probation determined that the Reid's advisory guidelines are 27-33 months, based on a total offense level of 12 and a criminal history of  V.  The government is in agreement with the guidelines calculation.

## III. DISCUSSION

### A. Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520

F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines.  *Id.*  After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)   the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3)   the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>
> (4)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;
>
> (5)   the need to provide restitution to any victims of the offense.

## B.      Recommended Sentence

This case is tragic beyond measure.  Reid made a series of horrible decisions that led to unimaginably tragic consequences.  The dangers of fentanyl cannot be overstated.  Fentanyl – even in very small quantities – is the most dangerous drug to afflict the community in decades.  The drug typically is dosed in micrograms (millionths of a gram).[4]  A dose of 2,000 micrograms – just 2 milligrams (0.002 g) – is usually fatal to those without opioid tolerance.[5]  Even a small amount can be—and in this case was, lethal.

Unfortunately, the dangers of fentanyl are not merely theoretical in this case.  Reid's reckless actions caused a woman to needlessly lose her life.  Reid's distribution of fentanyl is not an isolated incident.  Reid has a lengthy criminal history, and the facts in this case show that Reid distributed fentanyl to multiple inmates in the short time she was incarcerated at SRJ in April and May 2021.  And

---

[4] *See* https://www.drugs.com/illicit/fentanyl.html, last visited October 20, 2022.

[5] *See* https://www.dea.gov/sites/default/files/2021-12/DEA-OPCK_FactSheet_December%202021.pdf.

1   while no one involved in this case believes that Reid intended for Victim 1 to die, the fact that she

2   watched her overdose without intervening out of a selfish desire to keep herself out of trouble is both

3   callous and cruel.  Moreover, while Reid plead guilty, her misstatements to the Court about her

4   continued drug use reflect an unwillingness to take accept full accountability for her actions. While the

5   government acknowledges that Reid herself appears to have a narcotics problem, mitigating her

6   culpability to a certain extent, her own addiction does not excuse her actions in the underlying case, or

7   her false statements to the Court.

8        The government acknowledges that Reid did accept responsibility early in this case for selling

9   fentanyl to Inmate 2 and Victim 1.  She had plead guilty to fentanyl distribution offenses and admitted in

10  the factual basis of the plea agreement that her drug trafficking caused Victim 1 to fatally overdose.  Her

11  early decision to plead guilty, paired with the Court's sentencing decision, will hopefully provide the

12  victim's family with closure and a greater ability to grieve their profound loss on their own terms,

13  without a trial in open court.

14       The need to avoid unwarranted sentencing disparities among similarly situated defendants also

15  counsels a substantial custodial sentence.  Undersigned government counsel is aware of a number of

16  other defendants in this district whose drug overdose cases have publicly gone to sentencing and

17  judgment and received significant custodial sentences similar to the sentence proposed by the

18  government here.  *See, e.g.*, *United States v. Xavier Jimenez Robledo*, No. 21-CR-114 BLF (pursuant to

19  a Rule (c)(1)(c) plea agreement, sentencing defendant—repeat fentanyl dealer who trafficked in pills he

20  knew contained fentanyl—concurrent 96- month sentences on two counts of distribution for sales where

21  two of his customers overdosed and one of them died); *United States v. Rodolfo Rivera-Herrera*, No.

22  15-CR-579 VC (pursuant to a Rule 11(c)(1)(c) plea agreement and subject to a ten-year mandatory

23  minimum sentence, sentencing defendant – a full-time heroin dealer who managed his own distribution

24  cell – to 145 months' imprisonment for his role distributing 8000 grams of heroin in a large-scale heroin

25  conspiracy, one gram of which was sold to a customer who overdosed and died); *United States v. Shane*

26  *Cratty*, No. 19-CR-681 CRB (pursuant to a Rule 11(c)(1)(c) plea agreement, Court imposes 96-month

27  sentence for selling a gram of fentanyl to a man who used it and whose 13-month-old son also ingested

28  it and they both died as a result); *United States v. Lindsay Williams (Muniz)*, No. 19-CR-681 CRB

1   (pursuant to a Rule 11(c)(1)(c) plea agreement, Court imposes 90-month sentence for selling a gram of

2   fentanyl in the same transaction as defendant Shane Cratty), and *United States v. Susan Arreola-Martin*,

3   No. 19-CR-20-108 JD and No. 21-CR-445 JD (pursuant to a Rule 11(c)(1)(c) plea agreement, Court

4   imposes 84-month sentence for engaging in mortgage fraud scheme and for giving fentanyl to

5   granddaughter while on pretrial release, leading to granddaughter's death); *United States v. Xavier*

6   *Jimenez Robledo*, No. 21-CR-114 BLF (pursuant to a Rule 11(c)(1)(c) plea agreement, Court imposes

7   96 month sentence for selling M30 pills laced with fentanyl, leading to overdose death).  Like these

8   defendants, Reid should be sentenced to a significant custodial term that reflects the severity, gravity,

9   and tragedy of her fatal drug distribution.

10          California law provides helpful guidance in determining an appropriate sentence in this case.

11   The Penal Code provides a 4, 6, and 10-year sentencing triad for gross vehicular manslaughter with

12   intoxication.  Cal. Penal Code § 191.5(c)(1).  The triad for voluntary manslaughter is 3, 6 or 11 years.

13   *Id.* § 193(a).  Both crimes require mens rea similar to that of the defendant here.  Gross vehicular

14   manslaughter requires a showing of gross negligence, which means the defendant acted in a reckless

15   way that created a high risk of death or great bodily injury, and that the defendant knew her/his acts

16   created that risk.  Cal. Crim. Jury Instr. 590.  Voluntary manslaughter can be charged where the

17   defendant acted with conscious disregard for life and the defendant's act caused someone's death.

18   *People v. Bryant*, 56 Cal. 4th 959, 968 (2013) ("A defendant commits voluntary manslaughter when a

19   homicide that is committed either with intent to kill or with conscious disregard for life—and therefore

20   would normally constitute murder—is nevertheless reduced or mitigated to manslaughter."); Cal. Crim.

21   Jury Inst. 572.

22          Reid acted with something akin to gross negligence or conscious disregard when she distributed

23   fentanyl to Victim 1, which led to her death.  Reid knew that the fentanyl she distributed to Victim 1 the

24   day of her death was powerful, even referring to it as the "big dog."  Reid didn't want or intend for

25   Victim 1 to die, but she knew it was a real possibility given the dangers of fentanyl.  And yet, knowing

26   this risk, Reid distributed the fentanyl to Victim 1, and other inmates.  Her actions reflect at least gross

27   negligence with regard to the risk of death her actions created.  The tragedy of her actions is

28   compounded by her failure to call for help, despite watching Victim 1 overdose before her eyes.  A

1    significant custodial sentence of 96 months is thus necessary in this case to reflect the seriousness of the

2    offense, promote respect for the law, and provide just punishment.  Further, it is meant to afford both

3    specific deterrence to the defendant and to send a message to others that recklessly distributing  fentanyl

4    will have significant consequences.

5    **IV.    CONCLUSION**

6          With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United

7    States respectfully recommends a sentence of 96-month imprisonment to be followed by a three-year

8    term of supervised release, forfeiture, and a $100 special assessment.

9

10

11   DATED:  October 21, 2022

12
                                           Stephanie M. Hinds
13                                         United States Attorney

14
                                             */s/Molly K. Priedeman*
15                                         MOLLY K. PRIEDEMAN
                                           Assistant United States Attorney
16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES' SENTENCING MEMORANDUM    7
22-CR-00142 JST